UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| John P. B., | Case No. 22-cv-1801 (MJD/JFD) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Kilolo Kijakazi, Acting Commissioner of Social Security, | |
| Defendant. | |

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff John P. B. seeks judicial review of a final decision by the Defendant Commissioner of Social Security denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The matter is now before the Court on Plaintiff's Motion for Summary Judgment (Dkt. No. 14) and Defendant's Motion for Summary Judgment (Dkt. No. 17), which have been referred to the undersigned for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 72.1(a)(3)(D).

Plaintiff seeks reversal of the final decision and remand to the Social Security Administration on the ground that the Administrative Law Judge ("ALJ") erred in considering the medical source statement and opinion of Lori Tingle, L.P., who is Plaintiff's therapist. Defendant opposes Plaintiff's motion, arguing that the ALJ properly articulated why he found Ms. Tingle's opinion not persuasive, and asks the Court to affirm the final decision. For the reasons set forth below, the Court concludes that the ALJ erred

1

in his evaluation of Ms. Tingle's opinion. Therefore, the Court recommends that Plaintiff's motion be granted, Defendant's motion be denied, and this matter be remanded to the Commissioner for further proceedings.

**I.      Background**

Plaintiff initially asserted that he became disabled on January 1, 2016. (*See* Soc. Sec. Admin. R. (hereinafter "R.") 270.)[1] He later amended his disability onset date to September 1, 2018. (R. 68.) His alleged impairments included ankylosing spondylitis, post-traumatic stress disorder ("PTSD"), anxiety, bipolar disorder, lumbar disc disease, cervical degenerative disc disease, substance addiction disorder (drugs), and mild liver function elevation. (R. 14.) Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021. (R. 13.)

**A.      Relevant Medical and Other Evidence**

In January 2019, Plaintiff began treatment with Abbey Kitto DNP, FNP-C. (R. 793.) Ms. Kitto diagnosed Plaintiff with a recurrent major depressive disorder, PTSD, and a history of polysubstance dependence. (R. 794.) Plaintiff returned for a follow-up and medication management appointment in February 2019. (R. 791.) Ms. Kitto's diagnoses at that time were bipolar disorder type II, PTSD, and a history of polysubstance dependence. (R. 792.)

---

[1] The Social Security administrative record is filed at Dkt. No. 11. The record is consecutively paginated, and the Court cites to that pagination rather than docket number and page.

In December 2019, a consulting psychiatrist, Dr. William Fuller, met with Plaintiff regarding his diagnoses of bipolar disorder type II, polysubstance dependence, and insomnia. (R. 785.) Dr. Fuller confirmed those diagnoses. (R. 786.) At a follow-up appointment in March 2020, Dr. Fuller reported that Plaintiff denied having any specific symptoms of mania or depression. (R. 783.) In addition, Plaintiff described no PTSD symptoms or return to substance abuse. (*Id.*)

Plaintiff went to the Southwestern Mental Health Center for a Standard Diagnostic Assessment conducted by Lori Tingle, L.P., on October 3, 2019. (R. 772.) The mental status examination revealed a cooperative attitude, appropriate and relaxed behavior, soft speech, a blunted affect, no evidence of delusions or hallucinations, slowed thoughts, impulsive judgment, fair insight, full orientation, intact memory, and a below average intellectual level. (R. 778–79.) Ms. Tingle wrote that Plaintiff struggled with social anxiety, depression, PTSD, and a chronic back condition. (R. 779.) She recommended that Plaintiff continue to attend psychiatry appointments, take medications as prescribed, and attend individual therapy sessions. (*Id.*)

Plaintiff continued therapy with Ms. Tingle through 2021. Plaintiff reported high levels of stress and depression on March 26, 2020. (R. 844.) Plaintiff said that he was isolated and afraid to leave his apartment due to COVID-19. (*Id.*) Plaintiff's anxiety related to COVID-19 was partially due to an autoimmune issue, Ms. Tingle reported on April 2, 2020. (R. 842.) On April 16, 2020, Plaintiff reported depression and thoughts of suicide. (R. 838.) Ms. Tingle encouraged him to walk his dog three times a day and interact with his mother daily. (*Id.*) Plaintiff met with Ms. Tingle again, via Zoom, on May 7, 2020. (R.

3

834.) Plaintiff still reported feeling very depressed and isolated, but Ms. Tingle noted there were no thoughts of suicide present. (*Id.*) Plaintiff continued to report feelings of depression and isolation throughout individual therapy sessions. (*E.g.*, R. 830, 832.) On July 9, 2020, however, Plaintiff said he had been feeling a little better and was keeping busy by helping a friend work on a car. (R. 959.) On July 15, 2020, Plaintiff reported feeling very depressed from being in a lot of pain. (R. 963.) This pain often kept Plaintiff in bed. (*Id.*)

On May 26, 2020, Plaintiff's file was reviewed by the reviewing state agency psychologist, Dr. M. Rosalie McMaster, who conducted a mental residual functional capacity assessment as part of the initial DIB determination. (R. 118–20.) Dr. McMaster found that Plaintiff had some understanding and memory limitations, sustained concentration and persistence limitations, and social interaction limitations. (*Id.*). Specifically, Dr. McMaster opined that Plaintiff was moderately limited in his ability to understand and remember detailed instructions, ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, ability to interact appropriately with the general public, ability to get along with peers, and ability to accept instructions and respond appropriately to criticism from supervisors. (*Id.*) Dr. McMaster opined that Plaintiff did have mental limitations, but that he was not precluded from all work-related activities. (R. 120.) Further, when Plaintiff was compliant with his medication, he had an improved mood, no anxiety, and good functioning. (*Id.*)

At the reconsideration stage of the disability benefits review process, Plaintiff's file was reviewed by Dr. Terry Jorgenson, another state agency psychologist. (R. 153–55.) Dr. Jorgenson agreed with the opinions of Dr. McMaster. (*Id.*)

On August 13, 2020, Plaintiff told Ms. Tingle that he had a "manic attack" resulting from an interaction with his mother. (R. 965.) Plaintiff became suddenly angry because his mother and her boyfriend wanted him to do physical work at their house. (*Id.*) Plaintiff reported he could not complete this work because of the pain in his back. (*Id.*) Plaintiff's mother threatened to put all of Plaintiff's belongings outside. (*Id.*) Plaintiff responded by kicking the front door of his mother's house off its hinges. (*Id.*) He then threw a full pop can at their car window and proceeded to speed away in his own car. (*Id.*) Plaintiff reported feelings of continued anger towards his mother and her boyfriend and expressed thoughts of harm towards the couple. (*Id.*) Plaintiff stated that he did not intend to act on those thoughts. (*Id.*) Plaintiff, per Ms. Tingle's recommendation, agreed not to return to his mother's house until he was in a calmer state of mind. (*Id.*)

On September 8, 2020, Plaintiff reported to Ms. Tingle that he returned to his mother's house to get more things. (R. 973.) Plaintiff reported there was no interaction between him and his mother, and reported depression due to the overall situation. (*Id.*) On September 22, 2020, Plaintiff reported severe neck pain to Ms. Tingle, stating that he could not turn his head, which prevented him from moving his things from his mother's place. (R. 977.) On October 1, 2020 Plaintiff reported feeling less of a person and increased depression due to his back pain. (R. 979.) This, along with social anxiety, resulted in Plaintiff continuing to isolate himself and to stay in his apartment. (*Id.*)

Ms. Tingle conducted an in-depth diagnostic assessment update on October 8, 2020. (R. 981.) Ms. Tingle described Plaintiff as struggling with severe mental health symptoms, which impaired his functioning and caused high isolation and anxiety. (*Id.*) Plaintiff's mental health symptoms included high social anxiety, depression, and angry outbursts. (*Id.*) Plaintiff's PTSD symptoms resulted from a history of physical and psychological child abuse from his father, according to Ms. Tingle. (*Id.*) This has led to intense psychological distress and physiological reactions, including loss of control and violence. (*Id.*) Ms. Tingle reported that Plaintiff recently attacked his mother's boyfriend after he was intentionally bumped in an altercation. (*Id.*) Plaintiff's anger led to detachment and loss of concentration. (*Id.*) Plaintiff's mental state also included fantasies of harming himself or others. (*Id.*) Ms. Tingle also reported that Plaintiff's social anxiety caused him to avoid social situations almost completely. (*Id.*) She stated that this social avoidance and anxiety prevented him from working towards employment. (*Id.*)

The mental status examination revealed a cooperative attitude, appropriate and relaxed behavior, soft speech, a dysphoric affect, no hallucinations or delusions, slowed thoughts, suicidal ideation when extremely agitated, moderately impaired judgment, intact memory, and poor insight. (R. 983.) Ms. Tingle recommended that Plaintiff continue therapy and medication management. (R. 984). She also stated that Plaintiff would benefit from receiving disability benefits as he is unable to be in the work environment and cannot function around others. (*Id.*)

On November 12, 2020, Plaintiff reported to Ms. Tingle that he continued to isolate and rarely left his apartment. (R. 998.) This isolation continued through March 4, 2021. (R. 1030.)

On February 4, 2021, Ms. Tingle completed a mental medical source statement. (R. 915.) Ms. Tingle listed Plaintiff's diagnoses at that time as PTSD and social anxiety disorder. (*Id.*) Ms. Tingle expressed her opinion that Plaintiff's pain from ankylosing spondylitis has contributed to his need to isolate himself from others. (*Id.*) Plaintiff was taking several medications for physical and mental ailments including Traxodone, Lexapro, Lamictal, Klonopin, and Invega. (*Id.*) Ms. Tingle indicated that Plaintiff had extreme mental limitations maintaining attention and concentration for more than two-hour segments, performing activities within a schedule, working in coordination with others, completing a normal workday and work week without interruptions from psychologically based symptoms, responding appropriately to changes in the work setting, traveling in unfamiliar places or using public transportation, and tolerating normal levels of stress. (R. 916.) Ms. Tingle noted marked limitations in remembering locations and work-like procedures, understanding and remembering detailed instructions, sustaining an ordinary routine without supervision, accepting instructions and responding appropriately to criticism from supervisors, and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes. (R. 916.) Ms. Tingle also added that Plaintiff could not participate in an eight-hour workday because he could not focus or concentrate and would require unscheduled breaks. (R. 917.)

In addition to evidence about Plaintiff's mental impairments, the administrative record includes evidence of lumbar degenerative disc disease, cervical degenerative disease, substance addiction disorder (drugs), and mild liver function elevation. (R. 14.) Plaintiff's back and neck conditions were monitored through x-rays in October 2020. (R. 14.) The results showed no definite evidence to suggest radiographic axial spondyloarthritis. (*Id.*) There were mild findings in Plaintiff's cervical and lumbar spine, but no findings in the thoracic spine. (*Id.*) Physical therapy was recommended but there is no evidence that Plaintiff acted on this advice. (*Id.*)

### B. Procedural History

Plaintiff's SSI and DIB applications were denied at the initial review and reconsideration stages. On May 17, 2021, on Plaintiff's written request, a hearing before an ALJ was conducted. (R. 63.) Plaintiff testified that he had difficulties getting along with co-workers and supervisors in past jobs. (R. 74–75.) His anxiety made it difficult for him to communicate with people, which caused him to isolate. (R. 75–76.) He testified he could not care for himself physically when his depression or anxiety worsened. (R. 76.) These heightened episodes occurred a few times a week, according to Plaintiff. (*Id.*)

Ms. Tingle also testified on behalf of Plaintiff. Ms. Tingle testified that Plaintiff had difficulty focusing and had slowed thoughts, but he was on time for appointments and did not miss them. (R. 78.) Ms. Tingle also testified that she had never seen Plaintiff in happy or light-hearted moods during therapy sessions, but he was frequently agitated, irritable, or angry. (R. 78–79.) It was also very difficult for Plaintiff to leave his apartment. (R. 79.)

The ALJ issued a decision on June 16, 2021 determining that Plaintiff was not disabled. (R. 11–22.) The ALJ conducted the five-step sequential analysis outlined in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). In the first step, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the amended disability onset date of September 1, 2018. (R. 13–14.) At step two, the ALJ concluded the Plaintiff's impairments of ankylosing spondylitis, PTSD, anxiety, and bipolar disorder were severe impairments. (R. 14); see 20 C.F.R. §§ 404.1520(c), 416.920(c). The ALJ concluded at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. (R. 14.)

Before moving to step four, the ALJ assessed Plaintiff's residual functional capacity. The ALJ found that Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that the claimant is able to lift and carry 20 pounds occasionally and 10 pounds frequently. He can stand and walk 6 hours in an 8-hour workday and sit 6 hours in an 8-hour workday. He can occasionally climb ramps and stairs but never climb ladders, ropes, and scaffolds. He can occasionally balance, as defined in the Selected Characteristics of Occupations, and occasionally stoop, kneel, crouch, and crawl. He is limited to simple, repetitive, tasks. He can have occasional interaction with coworkers and supervisors, but have no interaction with the general public. He must work in a routine work setting.

(R. 16.) The ALJ, in arriving at this residual functional capacity, considered evidence from Ms. Tingle and other sources. (R. 17–20.) The ALJ identified treatment records showing that Plaintiff had done "fairly well with his mental health medications and therapy." (R. 18.) The ALJ accounted for Plaintiff's impulsivity, social anxiety, and tendency to isolate.

9

(R. 18.) However, mental status examinations were generally intact, and Plaintiff's anger and impulsivity "have been life-long issues" that had not precluded full-time work in the past. (R. 19.) The ALJ found the opinions of Dr. McMaster and Dr. Jorgensen persuasive but the February 2021 medical source statement from Ms. Tingle not persuasive. (R. 19–20.) The ALJ expressly determined that Ms. Tingle's opinion was inconsistent with the entire record, including mental status examinations, particularly findings of fair or good attention and concentration. (R. 20.) The ALJ found that treatment notes were also inconsistent with the level of pain and physical dysfunction Plaintiff reported to Ms. Tingle. (*Id.*)

Considering all the evidence of record, the ALJ determined at step four that Plaintiff could not perform any past relevant work. (R. 20–21.) At step five, the ALJ determined that Plaintiff could perform jobs within the national economy such as small parts assembly, poly packer, and office helper. (R. 21–22.) Therefore, Plaintiff was not disabled. (R. 22.)

The Appeals Council denied Plaintiff's request for review in May 2022. (R. 1-7.) This made the ALJ's decision the final decision of the Commissioner for the purpose of judicial review in accordance with section 205(g) of 42 U.S.C. § 405(g).

**II.   Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence in the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the

Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id*. (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or because the Court would have decided the case differently. (*Id.*) (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

It is a claimant's burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB and SSI, the claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A). The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

Plaintiff was last insured for DIB purposes on December 31, 2021. (R. 274.) A DIB "applicant must establish that she was disabled before the expiration of her insured status." *Pyland v. Apfel*, 149 F.3d 873, 876 (8th Cir. 1998). Thus, the relevant period for Plaintiff's DIB claim is from September 1, 2018 (the alleged disability onset date) to December 31, 2021 (the expiration of insured status). SSI benefits are not payable before an application

11

is filed, 20 C.F.R. § 416.335, and thus, the relevant time frame for Plaintiff's SSI claim is from January 31, 2020 (the date of the SSI application) to June 16, 2021 (the date of the ALJ's decision). *See Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989) (using SSI application date to mark the beginning of the time period at issue); *Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013) (using the date of the ALJ's decision on the SSI claim to mark the end of the relevant time period).

### III. Discussion

Plaintiff alleges that the ALJ failed to properly consider the supportability factor of 20 C.F.R. §§ 404.1520c and 416.920c in assessing the persuasiveness of Ms. Tingle's medical source statement dated February 4, 2021. (Pl.'s Mem. Supp. Mot. Summ. J. at 9–10, Dkt. No. 17.) Plaintiff contends that Ms. Tingle's treatment notes, which discussed Plaintiff's depression and social anxiety at length, supported her opinion, yet the ALJ did not even address the supportability factor. (*Id.* at 10–12.) Plaintiff argues that the ALJ's failure to adequately consider Ms. Tingle's opinion and other treatment notes resulted in an inaccurate determination of residual functional capacity.

Supportability and consistency are two of five factors used when considering and articulating the persuasiveness of medical opinions. 20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2). These two factors are the most important factors when evaluating the persuasiveness of an opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The regulatory language pertaining to supportability provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more

12

persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). In evaluating consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

> The ALJ's complete consideration of Ms. Tingle's opinion follows.
>
> The claimant's therapist, Lori Tingle, MA, LP, provided an opinion in February 2021 (Exhibit B8F). Ms. Tingle opined to moderate to marked-extreme level of mental limitations (Exhibit B8F, p. 3). Ms. Tingle opined that the claimant would require unscheduled breaks during an eight-hour workday, as well as being absent more than three days per month (Exhibit B8F, p. 5). Ms. Tingle supported her opinion by noting that the claimant could not focus or concentrate, that he would become overwhelmed with any changes in routine, requirements to be around people, and avoids contact with others almost entirely (Exhibit B8F, p. 4). Further, Ms. Tingle opined that the claimant's pain from AS affected his ability to focus and concentrate (Exhibit B8F, p. 4). However, Ms. Tingle's opinion is not consistent with the full record. As detailed above, mental status examinations were generally intact, which included notes showing fair to good attention and concentration. Further, limitations in the above residual functional capacity have been included to account for the claimant's social functioning, based on the medical records the claimant's testimony at the hearing. Additionally, treatment notes are not consistent with the level of pain and physical dysfunction alleged by the claimant. For all of these reasons, Ms. Tingle's opinion is not persuasive.

(R. 20.)

With respect to the consistency factor, the ALJ determined that Ms. Tingle's opinion was inconsistent with "the full record," particularly mental status examinations, Plaintiff's reported pain level, and Plaintiff's physical functioning. (R. 20.) Contrary to Plaintiff's position, the ALJ did cite to specific evidence in the record to support this determination

by referring to the evidence "detailed above" in the decision. (R. 20.) The evidence "detailed above" included citations to the record of generally unremarkable mental status examinations (R. 19 (citing Exs. B3F at 11–12, 16–23, 29–30; B7F at 14; B9F at 15, 40; B10F at 32, 46–47, 65–67).) The evidence "detailed above" of Plaintiff's pain levels included "flares" of back pain that occurred once a month and were resolved with NSAIDS (R. 18 (citing Ex. B7F at 12)); and reported pain only when lifting heavy loads (R. 18 (citing Ex. B9F at 38)). The evidence "detailed above" of Plaintiff's physical functioning included generally intact physical examinations (R. 18 (citing Exs. B2F at 9, 14; B5F at 6; B7F at 16)); no objective evidence of active, inflammatory arthritis (R. 18 (citing Ex. B7F at 11)); minimal x-ray findings of the spine (R. 18 (citing Exs. B7F at 11; B9F at 18–22)); and successful treatment of his ankylosing spondylitis (R. 18 (citing Exs. B2F at 15, 23, 38; B5F at 7)). The ALJ was not obligated to repeat all of this evidence two pages later when assessing the persuasiveness of Ms. Tingle's opinion. The Court finds that the ALJ adequately considered and articulated his consideration of the consistency factor.

Turning to the supportability factor, the only mention of supportability in the ALJ's decision as to Ms. Tingle's opinion was a single sentence: "Ms. Tingle supported her opinion by noting that the claimant could not focus or concentrate, that he would become overwhelmed with any changes in routine, requirements to be around people, and avoids contact with others almost entirely." (R. 20.) The ALJ did not explain, however, how relevant the supporting evidence was to Ms. Trimble's opinion or whether the ALJ considered the supportability factor to make the opinion more or less persuasive. This was a legal error. An ALJ "*will* explain how [he] considered the supportability and consistency

factors . . . ." 20 C.F.R. §§ 404.1520c(b)(2) (emphasis added), § 416.920c(b)(2) (same); *see Michael B. v. Kijakazi*, No. 21-CV-1043 (NEB/LIB), 2022 WL 4463901, at *2 (D. Minn. Sept. 26, 2022) (holding that an ALJ's failure to articulate how she considered the supportability factor was a legal error warranting remand). Moreover, if anything, by finding that Ms. Tingle "supported her opinion" and then listing the supporting evidence, that would indicate that the ALJ found that the supportability factor made Ms. Trimble's opinion more persuasive, not less. And if that were so, the ALJ did not explain why he found the non-persuasive consistency factor more important than the persuasive supportability factor. The Court recommends that the case be remanded to the Commissioner for further evaluation of Ms. Tingle's opinion pursuant to 20 C.F.R. §§ 404.1520c and 416.920c.[2]

### IV. Recommendation

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Plaintiff's Motion for Summary Judgment (Dkt. No. 14) be **GRANTED**;

---

[2] Plaintiff makes two additional arguments, which the Court concludes do not warrant remand. First, Plaintiff argues that the ALJ failed to adequately consider Ms. Tingle's hearing testimony and treatment records. (Pl.'s Mem. at 11.) The Court disagrees. The ALJ explicitly considered Ms. Tingle's hearing testimony but determined that her failure to recommend any vocationally relevant limitations was consequential. (R. 20.) As to other treatment records, an ALJ is not required to evaluate those under 20 C.F.R. §§ 404.1520c and 416.920c. Those regulations apply only to medical opinions and prior administrative findings. Second, Plaintiff asserts there is overwhelming evidence to support Ms. Tingle's opinion. (Pl.'s Mem. at 10.) The Court may not reverse the ALJ's decision, however, simply because substantial evidence would support a different outcome. *See Krogmeier*, 294 F.3d at 1022.

2. Defendant's Motion for Summary Judgment (Dkt. No. 17) be **DENIED**;

3. This matter be **REMANDED** to the Commissioner for further consideration of Ms. Tingle's opinion in accordance with 20 C.F.R. §§ 404.1520c and 416.920c; and

4. **JUDGMENT BE ENTERED ACCORDINGLY**.

Date:  July 17, 2023        *s/ John F. Docherty*
                            JOHN F. DOCHERTY
                            United States Magistrate Judge

**NOTICE**

**Filing Objections**: This Report and Recommendation is not an order or judgment of the District Court and therefore is not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to D. Minn. LR 72.2(b)(1), a party may file and serve specific written objections to this Report and Recommendation within fourteen days. A party may respond to objections within fourteen days of being served a copy. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).